Freda COUNCELLER, Appellant–Respondent,

v.

John COUNCELLER, Appellee–Petitioner.

No. 40A01–0307–CV–250.

Court of Appeals of Indiana.

June 16, 2004.

Freda Counceller, San Juan Capistrano, CA, Appellant pro se.

Alison T. Frazier, Eckert Alcorn Goering & Sage, LLP, Madison, IN, Attorney for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant/Cross–Appellee–Respondent Freda Counceller ("Mother") appeals the denial of her motion to correct error, which challenged findings of fact, conclusions of law and judgment entered upon Mother's motion to modify child support and petition for contempt against Appellee/Cross–Appellant–Petitioner John Counceller ("Father"). We affirm.

### Issue

Mother articulates several issues, some related to prior orders of the trial court, which Mother did not appeal, and some related to alleged assaults upon the emotional well-being of Mother and her children. On cross-appeal, Father contends that this Court need not address the merits of the issues articulated by Mother, because of the doctrine of res judicata. We address a single, consolidated issue not barred by the doctrine of res judicata: whether the findings of fact, conclusions of law and judgment entered by the trial court on January 29, 2003 were clearly erroneous.

### Facts and Procedural History

The marriage of the parties was dissolved on April 5, 1993, and Mother was awarded physical custody of their three children. Father was ordered to pay child support in the amount of $268.00 per week. On September 18, 1996, Father's child support obligation was increased to $345.00 per week. Father was also required to pay two-thirds of uninsured medical expenses in excess of $1,000.00. Mother moved with the children to California in 1996, and Father, who remained an Indiana resident, petitioned for modification of custody. His petition was denied, and he appealed to this Court. On June 4, 1997, this Court affirmed the custody determination of the trial court. *Counceller v. Counceller,* No. 40A01–9701–CV–33, 681 N.E.2d 785 (Ind.Ct.App. June 4, 1997). This Court aptly observed: "Both parents are passive aggressive and have used the children to make the other's life miserable." Op. at 374. The proliferation of ensuing legal filings cannot be succinctly summarized herein; thus, an abbreviated history of proceedings follows.

On May 23, 2002, child support was again modified. Father was ordered to pay $237.00 per week, and 43% of uninsured medical expenses in excess of $750.00. The trial court found Father current upon his basic child support obligation, but in arrears upon his medical expenses obligation. The trial court ordered Father to pay $11,580.00 in uninsured medical expenses, in installment payments of $163.00 per week. Additionally, Father was ordered to pay $2,000.00 of Mother's attorney's fees. The trial court's order was not appealed.

On July 5, 2002, Mother filed an "Affidavit for Citation for Contempt Regarding Past Due Child Support and Motion for

Emergency Hearing Regarding Past Due Unaccompanied Child Fees and Transportation Payments for Children's Dog Cofax."[1] (Appellee's App. at 18, 51.) On July 8, 2002, Mother filed her "Petition for Attorney Fees Incurred Due to Petitioner's Frivolous Causes of Action Relating to Custody."[2] (Appellee's App. at 18, 56.) A telephonic conference concluded with the trial court's decision that Cofax would not accompany the children to Indiana for visitation and Father could not be held in contempt for failure to make travel arrangements for Cofax. On November 21, 2002, Father moved to dismiss Mother's Affidavit and Mother's Petition for Attorney Fees.[3]

The trial court held a hearing on November 25, 2002 and issued Findings of Fact, Conclusions of Law and Order on January 29, 2003. The order provided in pertinent part as follows:

> The Court now finds that it has continuing jurisdiction in this by virtue of Mr. Counceller's continuing residence in Indiana. The Court further finds that Mr. Counceller is not in contempt for failure to pay child support as ordered. Though his payments have been irregular, he has been ahead as often as he has been behind, and the Court will not find he is in contempt at this time. He was not in arrears on July 8, 2002 when the current petition was filed.
>
> The issue of modification of child support is once again before the Court.

Freda's public relations business, Publicity Plus, has suffered a reversal due to the loss of its largest client, Exxon Mobile Global Services Company. In anticipation of this loss Freda has been seeking other clients and free lance writing. She is also in the process of putting her bed and breakfast business on a sound financial footing. This involves three units, two in California and one in Indiana. Freda also has three residential rental properties. She is capable of earning $60,000 to $70,000 a year as a public relations employee.

> The Court heard no evidence of a change in circumstances so substantial and continuing that would require a change in the previous order of support.
>
> Freda has also asked for attorney's fees for this case. However, since she is appearing *pro se*, that issue is moot. Freda has also asked that the Court revisit the issue of medical bills incurred prior to the Court's previous order on that issue. The Court will not do so.

(Appellee's App. at 73–74.)

On February 22, 2003, Mother filed a motion to correct error and a successive "Petition for Attorney Fees Incurred Due to Petitioner's Frivolous Causes of Action Relating to Custody." (Appellee's App. at 22.) On March 31, 2003, the trial court summarily denied Mother's motion to correct error and successive petition for attorney's fees. This appeal ensued.[4]

---

1. The unsworn "Affidavit" was apparently treated as a pleading by the trial court. Mother requested relief as follows: (1) an emergency telephone conference; (2) airfare for Cofax, the children's dog; and (3) a hearing addressing un-reimbursed travel fees, a college fund, extracurricular activities payments through 1999, and attorney's fees. (Appellee's App. at 53.)

2. Mother sought an award of attorney's fees in the amount of $186,067.69, incurred in 1996 and successive years.

3. Father contended that the issues raised in Mother's Affidavit and Petition were barred by the doctrine of res judicata.

4. Mother advised this Court in her appellate brief that Judge Todd recused himself in July 2003; Judge Vance of Decatur County assumed jurisdiction in October 2003; and a

## Discussion and Decision

### 1. Jurisdiction

■ We first address Mother's contention that the trial court abused its discretion by retaining jurisdiction over her claims, despite her request for "consideration of transfer" contained within her July 2002 "Petition for Attorney Fees Incurred Due to Petitioner's Frivolous Causes of Action Relating to Custody," as follows:

> The Mother also respectfully Petitions the Court to consider transfer of jurisdiction to the County of Orange, California, which has been the children's home for more than six years. It is important to note that the only reason that the Indiana Court assumed jurisdiction in the dissolution matter in 1991 is that John Counceller and his attorney Don Edwards lied to the Bartholomew County Circuit Court under oath stating that the Michigan paternity case had been dismissed so that he could have a home court advantage.

(Appellee's App. at 59.) On appeal, Mother argues that "various cases related to the Uniform Child Custody Act grant the trial court specific discretion to transfer jurisdiction even when one party in the dissolution remains in the state if the court finds that such transfer of jurisdiction is in the children's best interests." Appellant's Br. at 34.

■ At the November 25, 2002 hearing, the trial court acknowledged Mother's request to transfer jurisdiction to the State of California, but observed that there was no custody dispute to be resolved. The Indiana legislature has enacted the "Uniform Child Custody Jurisdiction Law," Ind.Code Section 31–17–3–1, et seq., ("UCCJL") for the purpose of "avoiding jurisdictional competition and conflict with courts of other states in matters of child custody." Ind.Code Section 31–17–3–1(1). In child custody cases having interstate dimensions, the trial court is required to determine whether it has jurisdiction under the UCCJL and, if it does, whether to exercise that jurisdiction. *Meyer v. Meyer*, 756 N.E.2d 1049, 1051 (Ind.Ct.App. 2001). Here, however, the record reveals that the issues before the Jennings Circuit Court involved child support, rather than child custody. Accordingly, Mother has established no abuse of discretion in the trial court's denial of her request for a transfer of jurisdiction pursuant to a "Uniform Child Custody Act."

### 2. Issues Barred by Res Judicata

■ Father moved the trial court to dismiss Mother's pleadings, claiming that all the issues she raised were previously adjudicated and barred by the doctrine of res judicata. Acknowledging that certain of Mother's claims were barred by res judicata, the trial court addressed only the issues of jurisdiction, modification of child support, contempt for alleged failure to pay child support, and attorney fees as related to the instant proceeding, in which Mother appeared pro se. On cross-appeal, Father renews his argument that none of Mother's claims should be addressed, because they are barred by res judicata.

■ The doctrine of res judicata bars re-litigation of an issue where there has been a final adjudication on the merits of the same issue between the same parties or their privies by a court of competent jurisdiction. *Dickson v. D'Angelo*, 749 N.E.2d 96, 99–100 (Ind.Ct.App.2001). To the extent that Mother sought to re-litigate issues already considered and determined in the May 23, 2002 order, which order was not appealed, those issues are

hearing was scheduled for December 17, 2003.

res judicata.[5] Accordingly, this Court, like the trial court, will not address Mother's contentions regarding the proper amounts of pre-May 2002 attorney fees and medical expenses, or the visitation provisions of the May 23, 2002 order.

### 3. Review of January 29, 2003 Findings, Conclusions and Judgment

Pursuant to Father's request, the trial court entered Indiana Trial Rule 52(A) specific findings. Upon review, we must first determine whether the evidence supports the findings and second, whether the findings support the judgment. *Crowley v. Crowley*, 708 N.E.2d 42, 54 (Ind.Ct.App. 1999). The judgment will be reversed only when it is clearly erroneous. *Id.* Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences to support them. *Id.* As Mother had the burden of proof in establishing a substantial and continuing change in circumstances to support the modification of child support, she appeals from a negative judgment.

■ Mother challenges the trial court's finding that Father was not in contempt of court. Father submitted into evidence a child support payment history from the Jennings County Clerk's office, disclosing that Father was not in arrears in child support but also disclosing that lump sum payments, rather than weekly payments, were often made. Father's attorney indicated that he paid in advance because his income was from self-employment and was thus erratic. Mother objected that the trial court's order specified weekly payments, but conceded that Father was current on his child support as of the hearing. With respect to the payment of $2,000.00 in attorney's fees, previously ordered by the court, Mother testified that Father paid $2,000.00 directly to her former attorneys. As such, the trial court's finding of no contempt is not clearly erroneous.

■ Mother also challenges the trial court's conclusion that she did not meet her burden, pursuant to Indiana Code Section 31–16–8–1(1), of showing a change of circumstances so continuing and substantial as to make the terms of the existing child support order unreasonable. Mother points to her testimony that she lost a valuable client in her public relations business. Mother testified that in 2001, her gross income was $365,367.00 and in 2002, her gross income was $268,286.00, but the "net income" for those years was "about the same." (Tr. 326–327.) She further testified that her income had recently declined due to the loss of a major client. However, Mother also testified that she acquired a consulting contract and was pursuing writing assignments, from which she hoped to earn $64,000.00 annually. Mother also testified: "I'm trying to finish up the bed and breakfast in San Clemente."[6] (Tr. 314.) Thus, the evidence supports the trial court's conclusion that a recent decline in Mother's income because of the loss of one client did not constitute a

---

**5.** In her reply brief, Mother requests that this Court treat her collective trial court pleadings filed after May 23, 2002 as a Trial Rule 60(B) motion for relief from the May 23, 2002 judgment. Nevertheless, even if we were at liberty to treat the pleadings as a motion for relief from judgment, although they were not designated as such in the trial court, a T.R. 60(B) motion for relief from judgment may not be used as a substitute for a direct appeal. *Gold-*

*smith v. Jones*, 761 N.E.2d 471, 474 (Ind.Ct. App.2002), *reh'g denied.* It affords relief only in extraordinary circumstances that are not the result of any fault or negligence on the part of the movant. *Id.*

**6.** As the trial court observed, Mother was also operating two other bed and breakfast establishments.

continuing and substantial change in circumstances.

█ Mother also challenges the conclusion that an award for her attorney's fees is not warranted. Inasmuch as Mother appeared pro se at the November 25, 2002 hearing and proffered no evidence that she had incurred attorney's fees since the May 23, 2002 order addressing attorney's fees, the evidence supports the trial court's determination that no additional award of attorney's fees was warranted as of the trial court's January 29, 2003 judgment. Pro se litigants are not entitled to attorney's fees. *Miller v. West Lafayette Comm. Sch. Corp.*, 665 N.E.2d 905, 906–07 (Ind.1996).

█ Mother also contends that the trial court's judgment is contrary to law because the trial court failed to compel third-party discovery relevant to Father's income. At the November 25, 2002 hearing, the trial court afforded Mother the opportunity to present evidence that she had subpoenaed documents from third parties. However, Mother was unable to produce evidence of subpoenas with which third parties allegedly failed to comply, and declined a continuance.[7] As such, she has not established reversible error on this basis.

██ Finally, Mother claims that the child support judgment is deficient because it does not order Father to establish a college fund, nor does the judgment specifically address the children's extracurricular activities expenses. A child support award based upon the Indiana Child Support Guidelines bears a rebuttable presumption of correctness. *Kinsey v. Kin-*

*sey*, 640 N.E.2d 42, 43–44 (Ind.1994). However, a parent may present evidence that an award in excess of the Guideline amount is appropriate because of variables such as extraordinary expenses. *Id.* Nevertheless, Mother did not present evidence at the November 25, 2002 hearing of the children's extraordinary educational or extracurricular expenses, if any. In sum, Mother has not demonstrated that the trial court's findings, conclusions and judgment are contrary to law.

Affirmed.

FRIEDLANDER, J., concurs.

BAKER, J., concurs in result with separate opinion.

BAKER, Judge, concurring in result.

I fully concur in the result reached by the majority. However, I would remand for an assessment of attorney fees against Mother.

Initially, I wish to point out that, although Indiana has continuing jurisdiction here, I am certain that our courts would be only too happy to send this case to California considering the judicial resources that the seemingly endless litigation between these ex-spouses consumes. However, we will spare our west coast colleagues this fate.

Indiana Rule of Appellate Procedure 66(E) provides, "The Court may assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees. The Court shall remand the case for execu-

---

7. In response to the trial court's inquiry as to whether Mother desired a continuance to obtain subpoenaed information, Mother replied: "No, Your Honor. I'm asking that the—the testimony today be, you know, waived and that my tax return and the documents provid-ed be used in the interim for modification purposes and that as soon as the—John Counceller presents his 2001 tax return and we get documentation from National City Bank and J. Andrew Counceller, that it be reviewed at that time again." (Tr. 335.)

tion." Here, nearly all of the nine issues that Mother raised are barred by res judicata. As for the remaining issues, Mother presented no evidence to the trial court to sustain her burden of proof for the majority of the trial court's findings about which she now complains. Thus, I am compelled to conclude that Mother's litigation and appeal are clearly frivolous with respect to these issues, and Father is entitled to attorney fees. However, I would find that Father is only entitled to a portion of those fees inasmuch as Mother's argument regarding changed circumstances, while weak, was not completely without merit.